UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CT-3186-FL

| | |
|---|---|
| JOSEPH RANDOLPH MAYS, ) | |
| ) | |
| Plaintiff, ) | DEFFENDANTS' MEMORANDUM IN |
| ) | SUPPORT OF MOTION TO DISMISS |
| v. ) | FOR FAILURE TO STATE A CLAIM |
| ) | PURSUANT TO RULE 12(b)(6) |
| T.B. SMITH, et al., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Joseph Mays ("Mays") brings this <u>Bivens</u>[1] action alleging defendants fabricated disciplinary charges in retaliation for his filing grievances, which resulted in his placement in administrative detention, loss of UNICOR job, and transfer to a more restrictive prison. (DE 1, 8, 45). Three claims survived frivolity review: First Amendment retaliation for filing grievances, Fifth Amendment due process in disciplinary action, and Fifth Amendment equal protection in the workplace. (DE 12, 44).

The Court should dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), all <u>Bivens</u> claims because (1) Mays failed to exhaust mandatory administrative

---

[1] <u>See</u> <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) (wherein the Supreme Court recognized a claim for monetary damages against government officials in their individual capacities for alleged violation of constitutional rights, even though no statute authorized a right to sue).

1

remedies under the Prison Litigation Reform Act (PLRA); (2) Mays failed to plead constitutional violations; 3) Mays failed to plead claims cognizable under <u>Bivens</u> post-<u>Abbasi</u>, and 4) the individual defendants are entitled to qualified immunity.

## STATEMENT OF THE CASE

On July 23, 2018, Mays filed the complaint. (DE 1). On September 6, 2018, Mays filed an amended complaint with a declaration and exhibits. (DE 8, 8-1–8-4). On February 27, 2019, the order on frivolity review was filed permitting to proceed counts one, three, and six of the first amended complaint (DE 8) and authorizing Mays to file an amended complaint to correct defects in the counts dismissed.[2] (DE 12). Mays timely filed a proposed second amended complaint with declaration and exhibits. (DE 35-1 – 35-5). On October 29, 2019, the second order on frivolity review was filed, again, permitting to proceed counts one, three, and six, except paragraphs 173, 190-91, and 195. (DE 44). The second amended complaint and its exhibits were filed. (DE 45, 45-1 - 45-5). The court granted Mays' motion to file under seal his medical records (DE 45-4 and 45-5). (DE 44, p. 7, ¶ 2).

## STATEMENT OF FACTS

A.    <u>Facts Alleged by Mays in the Complaint</u>.

The defendants are FCI-Butner Warden Smith; FCI-Butner Associate Warden Ma'at; UNICOR Factory Manager Hoskins; SIS Officer Glass; SIS Officer Slaydon; Lt. Christopher; Lt. Hendry; Clemons Unit Manager Willis; Clemons Unit Case Manager Halfast; SHU Review Officer Lassiter; Clemons Unit Counselor Martin;

---

[2] The court noted that it assumed a <u>Bivens</u> remedy extended to Mays' claims only for purposes of frivolity review. (DE 12, p. 5, fn. 1).

2

Regional Director Caraway; Compound Officer Wilkins; Administrative Remedy Coordinator Williams; and Jane/John Does[3]. (DE 1, pp. 4-7).

Mays alleges defendants fabricated disciplinary charges that resulted in his being placed in administrative detention (SHU) for 71 days without notice of charges or a hearing. (DE 45, ¶¶ 181-83, 185-88, 192; DE 12, p. 8). Based on the false disciplinary charges, Mays alleges defendants terminated his employment in UNICOR and transferred him to a higher security BOP facility. (DE 12, pp. 8-9).

Mays alleges Ma'at and Hoskins acted in retaliation for Mays' filing grievances about his UNICOR job. (DE 12, p. 4). Mays alleges Smith and Caraway failed to act to address his placement in SHU and job termination or to prevent his transfer to a more restrictive prison after he informed them about the on-going unconstitutional conduct by their subordinates. (DE 12, pp. 6-7). Mays alleges that Smith, Ma'at, Hoskins, Willis, and Halfast did not terminate the UNICOR employment of other inmates with similar work records who did not file grievances. (DE 12, p. 13). Mays alleges Ma'at and Hoskins, based on race, did not fire Mays' UNICOR co-worker who had the same alleged job-performance issues. (DE 12, p. 13). Last, Mays alleges Hoskins (Caucasian) allowed other white inmates who worked in UNICOR privileges Hoskins did not allow Mays. (DE 45, ¶¶ 201-04).

---

[3] DOJ written authorization is required to represent defendants in <u>Bivens</u> actions. The USAO-EDNC does not have authority to represent unserved Doe defendants.

3

B.    Facts from the Records Mays Attached to the Complaint.

In support of his first and second amended complaints (DE 8, 45), Mays filed

the inmate transfer request, dated September 28, 2016, that FCI-Butner submitted

requesting that Mays be transferred "to Any appropriate MEDIUM facility". (DE 8-

2, p. 21) (emphasis original). The "Rationale" for transfer request reads as follows:

> On August 11, 2016, at approximately 11:40 a.m., inmate Mays
> [Register No. 43487-007] confronted staff at mainline regarding
> some concerns he had. During the confrontation, Mays became
> visibly agitated and made threatening comments towards staff.
> Mays stated, "he would do what he had to do" and "he could cause
> problems in UNICOR." During this same time, there was
> information circulating throughout the Bureau of Prisons
> regarding a proposed work stoppage on September 9, 2016.
> Inmate Mays was placed in Administrative Detention pending an
> SIS investigation. The investigation determined that inmate
> Mays has animosity towards certain staff, because he didn't get
> "his way" in certain situations and due to flyers circulating
> pertaining to a work stoppage slated for September 9, 2016. The
> investigation further revealed that Mays attempted to
> manipulate a lower functioning inmate, with violent tendencies,
> into believing that staff and inmates were making fun of him.
> During one conversation, Mays picked up a hammer, slammed it
> down and stated that a staff member was going to get the
> hammer. It is the recommendation of the SIS Office that inmate
> Mays be transferred to an institution outside of FCC Butner, NC.
> Inmate Mays was recently re-classified as an 8-point HIGH
> security inmate with MEDIUM security management level. **Unit
> Team is requesting a transfer to any appropriate MEDIUM
> security facility.** Inmate Mays' projected release date is June 2,
> 2048. He is not appropriate for RRC referral at this time.

(DE 8-2, p. 21) (bold added to text otherwise emphasis original).

C.    Mays' Administrative Remedy Requests with BOP.

The BOP database, SENTRY, reflects Mays submitted 56 remedies with the

BOP as of October 15, 2019. See Exhibit 1, ¶ 8 (Storus Declaration); Exhibit 1,

4

Attachment A pages 1-29 (SENTRY printout). Mays filed six grievances regarding

conduct or conditions at FCI-Butner. See Exhibit 1, ¶¶ 9-14; (DE 8-2, 35-3).

| Remedy Number | Docket Entry | Mays' Allegations | Outcome |
|---|---|---|---|
| 868290 | DE 8-2, p.5, 6<br>DE 35-3, p. 5, 6 | Staff misconduct | Regional Office rejected and Mays did not appeal. (Storus Decl. ¶ 9). |
| 868292 | DE 8-2, p. 4, 7<br>DE 35-3, p. 4, 7 | Staff misconduct | Regional Office rejected and Mays did not appeal. (Storus Decl. ¶ 10). |
| 871972 | DE 8-2, p. 37<br>DE 35-3, p. 37 | Denied access to typewriter in library | Remedy was rejected and Mays did not re-submit or appeal. (Storus Decl. ¶ 11). |
| 872013 | | Remedy denied; exhibits considered continuation pages | Remedy was voided and Mays did not re-submit or appeal. (Storus Decl. ¶ 12). |
| 872015 | DE 8-2, p. 13, 39<br>DE 35-3, p. 13, 39 | Remedy Rejected; exhibit considered continuation page | Remedy closed and appeal rejected as untimely. Though instructed on cure, Mays did not re-submit an appeal. (Storus Decl. ¶ 13). |
| 879805 | DE 8-2, p. 49-50;<br>DE 35-3, p. 49-50<br>DE 8-2, p. 58-60;<br>DE 35-3, p. 58-60 | Staff misconduct | Regional Office rejected remedy and Central Office rejected appeal. (Storus Decl. ¶ 14). |

Subsequent grievances address conduct at FCI-Gilmer so they cannot support

the claims against Butner staff in this case. Exhibit 1, ¶¶ 16-17.

## ARGUMENT

Three claims survived frivolity review: First Amendment retaliation for filing

grievances, Fifth Amendment due process in disciplinary action, and Fifth

Amendment equal protection in the workplace. (DE 12, 44). For the reasons below,

Mays' claims fail and should be dismissed.

Out of an abundance of caution, all claims not addressed herein are denied.

## I. STANDARD OF REVIEW – RULE 12(b)(6).

Rule 12(b)(6) analysis requires courts to "determine whether the complaint is legally and factually sufficient." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677–80 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). This Court "need not accept [Mays'] legal conclusions, elements of a cause of action, or bare assertions devoid of further factual enhancement." <u>Iqbal</u>, 556 U.S. at 768. "[T]rue unwarranted inferences, unreasonable conclusions, or arguments" also need not be accepted by this Court. <u>Id.</u>, 556 U.S. at 678–79.

While conducting Rule 12(b)(6) review, this Court may consider documents that plaintiffs attached to and incorporated into the complaint. Fed. R. Civ. P. 10(c); <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). This Court also may consider documents that defendants attach to their motion to dismiss if the documents were "integral to and explicitly relied on in the complaint and [if] the plaintiff not challenge its authenticity.'" <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004) (citations omitted).

## II. MAYS' CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST MANDATORY PLRA ADMINISTRATIVE REMEDIES.

The Court should dismiss Mays' claims because he failed to exhaust PLRA administrative remedies as to the three claims that form the basis of the complaint. (DE 45). Defendants bear the burden to show failure to exhaust administrative remedies under the PLRA. <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 918-26 (2007)) (Exhaustion of PLRA

6

administrative remedies "is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it."). To meet their burden, defendants submit the Declaration of Mallory Storus and BOP SENTRY printout of Mays' grievances. See Exhibit 1, pages 1–9 and Exhibit 1, Attachment A pages 1-29, respectively.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other [constitutional] wrong."  Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).  The PLRA mandates exhaustion of all available remedies prior to filing suit. See Woodford v. Ngo, 548 U.S. 81, 85 (2006) (PLRA requires exhaustion of all available administrative remedies); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[U]n-exhausted claims cannot be brought in court."); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (PLRA requires exhaustion prior to filing suit).  The PLRA precludes exhaustion during the pendency of a lawsuit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (holding PLRA requires dismissal of prisoner suit filed prior to exhaustion of administrative remedies, even

7

if exhaustion occurs during lawsuit); <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 268 (D.C. Cir. 2001); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999) (same).

As the Supreme Court has held, "exhaustion in cases covered by § 1997e(a) is now mandatory." <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The mandatory language of § 1997e(a) means that "federal prisoners suing under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971)" – as Mays has in this case – "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." <u>Id.</u> The PLRA requires "proper exhaustion," and "untimely or otherwise **procedurally defective attempts to secure administrative remedies** do not satisfy the PLRA's exhaustion requirement." <u>Woodford</u>, 548 U.S. at 93 (emphasis added). The administrative process that a prisoner must exhaust is "defined not by the PLRA, but by the prison grievance process itself." <u>Jones</u>, 549 U.S. at 218.

Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules. <u>Woodford</u>, 548 U.S. at 90. Failure to exhaust administrative remedies is excusable only upon a showing of cause and prejudice. <u>Carmona v. Bureau of Prisons</u>, 243 F.3d 629, 634 (2d Cir. 2001). Even where "the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion." <u>Id.</u> An inmate must complete all stages of the administrative remedy process before the process is considered properly exhausted. <u>Woodford</u>, 548 U.S. at 88-89; <u>Wright v. Morris</u>, 111 F.3d 414, 417 n.3 (6th Cir. 1997).

A.     The BOP Inmate Grievance Process.

The BOP has established a four-tiered administrative remedy process. Title 28 C.F.R. § 542.10, et seq., sets forth the BOP's Administrative Remedy Program, which provides formal review of any complaint that relates to any aspect of the inmate's confinement. See 28 C.F.R. §542.10, et seq. This Administrative Remedy Procedure applies to Bivens claims filed by prisoners, such as Mays. See Gibbs v. Bureau of Prison Office, 986 F. Supp. 941, 943-44 (D. Md. 1997); Porter, 534 U.S. at 524. Under this process, inmates are encouraged first to attempt resolution of their complaints informally by discussing the matter with a member of the Unit Team. See 28 C.F.R. § 542.13.

If the attempt at informal resolution does not resolve the matter, inmates may file a formal written complaint on the proper form within 20 days of the date of the occurrence on which the complaint is based. 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, the inmate may appeal, using the appropriate form, to the Regional Director within 20 calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still not satisfied, the inmate may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. See id. An inmate is not deemed to have exhausted his administrative remedies until he properly has filed his complaint at all levels. See id.; Gibbs, 986 F. Supp. at 943-44.

9

Mays' claims in this case are subject to the PLRA's exhaustion requirement because Mays was an inmate at the time of filing the complaint, his claims are brought under federal law (<u>Bivens</u>), and his claims pertain to the conditions of his confinement in prison. <u>See</u> 42 U.S.C. § 19973(a). Mays failed to complete the entire inmate grievance process as to any of his claims. Therefore, Mays failed to exhaust administrative remedies required by the PLRA and all of his <u>Bivens</u> claims must be dismissed.

B.   <u>Mays Failed to Exhaust PLRA Administrative Remedies</u>.

The BOP database, SENTRY, reflects Mays submitted 56 remedies with the BOP as of October 15, 2019. Exhibit 1, ¶ 8. Of the six grievances that Mays submitted while at the FCI-Butner, only three address "staff misconduct": remedy numbers 868290, 868292, and 879805. <u>See</u> Exhibit 1, ¶¶ 9, 10, 14; Exhibit 1, Attachment B, p. 1. Mays improperly submitted all three grievances complaining of staff misconduct directly to the Regional Director, not to FCI-Butner where he was designated. <u>Id.</u> The Regional Office rejected all three remedy requests because the issues presented were not "sensitive" as required for direct submission to the Regional Office. <u>Id.</u> Mays, therefore, failed to comply with the BOP grievance procedure as to each grievance. As such, Mays failed to exhaust the PLRA mandated administrative remedy process as to each and all of Mays' <u>Bivens</u> claims based thereon must be dismissed.

The regulations governing the BOP Inmate Remedy Program, 28 C.F.R. §§ 542.10, <u>et.</u> <u>seq.</u>, require the first formal grievance (BP-9) be submitted "to the institution staff member designated to receive such Requests." 28 C.F.R.   §

542.14(c)(4). An inmate may submit the BP-9 directly to the Regional Director only if "the inmate reasonably believes the issue [presented] is sensitive". 28 C.F.R. § 542.14(d)(1). Thereafter,

> [i]f the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

Id.

Here, Mays submitted all three BP-9's alleging FCI-Butner staff misconduct directly to the Regional Office instead of to FCI-Butner. Exhibit 1, ¶¶ 9, 10, 14. The Regional Office rejected each grievances because each did not present a "sensitive" issue. Id. BOP notified Mays in writing of the rejection of each grievance. (DE 35-3, pp. 6, 7, 50). Mays failed to pursue any of the three rejections by re-submitting the three grievances to the warden at FCI-Butner. See 28 C.F.R. § 542.14(d)(1); Exhibit 1, ¶¶ 9, 10, 14. Hence, Mays failed to exhaust the BOP's mandatory administrative grievance procedures as to FCI-Butner staff misconduct. All of Mays' Bivens claims based thereon should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Further, Mays presents no evidence to suggest how filing an administrative remedy would be inadequate, or would not provide the relief requested. McKart v. United States, 395 U.S. 185, 200 (1969). Mays failed to exhaust administrative remedies without giving just cause why an administrative remedy would be

11

insufficient. Therefore, Mays' First Amendment retaliation and Fifth Amendment due process and equal protection claims must be dismissed for his failure to exhaust the mandatory administrative remedies under the PLRA. Fed. R. Civ. P. 12(b)(6).

## III. MAYS FAILS TO STATE A CLAIM FOR CONSTITUTIONAL VIOLATION BECAUSE THERE IS NO DUE PROCESS OR LIBERTY INTEREST IN TRANSFER, DESIGNATION, OR PRISON JOB.

Even if Mays had exhausted PLRA remedies on FCI-Butner staff misconduct resulting in transfer to another BOP facility and loss of UNICOR job, it is well-established that an inmate has no constitutional right to be assigned to a particular institution, nor any "justifiable expectation" that he will be confined in a particular prison. Meachum v. Fano, 427 U.S. 215, 224 (1976). See also Washington v. Rounds, No. PWG-16-320, 2017 WL 5668216, at *3 (D. Md. Nov. 27, 2017) ("inmates have no liberty interest in placement in a particular prison, and prison officials have broad discretion to classify inmates and assign them to appropriate prison housing.") (citing 18 U.S.C. § 3621(b); Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996) and Meachum, 427 U.S. at 224). Further, inmates do not have a constitutional right to a prison job. Thus, Mays' alleged constitutional violation should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

12

A.     Transfer or Designation to SHU Not Implicate Constitutional Right

The law is settled that prisoners do not possess due process or liberty interests

in a prison transfer decision.[4]  See Olim v. Wakinekona, 461 U.S. 238, 247-48 (1983);

Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Ajaj v. Smith, 108 F.App'x 743, 744

(4th Cir. 2004) (unpublished) (per curium) (noting that the BOP 'has discretion where

and under what conditions a federal prisoner is housed.") (citation omitted). The same

applies to placement in Special Housing Units (SHU's).  O'Bar v. Pinion, 953 F.2d 74,

82-84 (4th Cir. 1991) (prisoners have no right to a specific custody classification,

transfer, non-transfer, or work release); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir

1991) (to enable prison management to manage prisons safely and effectively, prison

administrators have broad discretion in change in prisoner location; variation in daily

routine; change in conditions of confinement, including administrative segregation;

and denial of privileges). Mays' claims regarding transfer and loss of UNICOR job,

therefore, should be dismissed for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6).

Mays, further, does not have a constitutionally recognized liberty interest in a

particular security classification nor a constitutional right to be designated

to/confined in any particular prison. Hewitt v. Helms, 459 U .S. 460, 468 (1983);

Meachum v. Fano, 427 U.S. 215, 224 (1976). To the extent Mays claims a right to

---

[4] Mays was transferred to the same Medium Security level prison as FCI
Butner. Exhibit 1, ¶ 20; see (DE 35-3, pp. 6, 7, 50). Mays was not sent to a
"more restrictive" prison setting. Id.

13

continued designation to FCI-Butner, such claim should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

B.    No Constitutional Right to UNICOR Job

May's expectation of a job within the prison does not rise to the level of a liberty interest entitled to protection under the equal protection clause of the Constitution. See, e.g., Backus v. Ward, No. 98-6331, 1998 WL 372377, *1 (4th Cir. June 8, 1998) (per curium) (unpublished). Courts have routinely held that a prisoner has no right to a job assignment such that Mays does not have a legitimate claim of entitlement to continuing UNICOR employment. See Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995); James v. Quinlan, 866 F.2d 627, 629-31 (3rd Cir. 1989) (holding that "plaintiffs have no liberty interest in their Federal Prison Industries job assignments"); Johnson v. Knable, No. 88-7729, 1988 WL 119136, *1 (4th Cir. 1988) (holding that "prison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate") (unpublished opinion), attached hereto as Exhibit 3; Altizer v. E. L. Paderick, 569 F.2d 812 (4th Cir. 1978) (assignment of work assignments are matters of prison administration); Jackson v. LaManna, No. 6:06-2812-GRA-WMC, 2007 WL 1862371, *3 (D.S.C. March 23, 2007) (stating that "[a]ll inmate job assignments are subject to the institution's needs, and inmates do not have any fundamental constitutional right to any specific work assignment") (unpublished opinion); Williams v. Farrior, 334 F. Supp. 2d 898, 904 (E.D. Va. 2004) (finding that prisoner was not entitled to due process protection because he had no

14

liberty or property interest in any prison job assignment or placement in any particular prison facility); see also, Walshlefske v. Winston, 234 F.3d 179, 185 (4th Cir. 2000) (holding that a prisoner does not have a constitutionally protected property interest in wages earned from their labor while in UNICOR employment).

Thus, as Mays has no liberty interest in placement in any work assignment including UNICOR, his claims that defendants violated his constitutional rights by getting him removed from his UNICOR work assignment are without merit and should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

## IV. MAYS' FIRST AND FIFTH AMENDMENT CLAIMS OF RETALIATION, DUE PROCESS, AND EQUAL PROTECTION VIOLATIONS MUST BE DISMISSED UNDER ZIGLAR V. ABBASI.

In the specific context of this case, Mays alleged defendants fabricated disciplinary charges in retaliation for his filing grievances in violation of the First Amendment. Mays alleged Fifth Amendment violations of 1) due process in his placement in administrative detention (SHU) and subsequent transfer to a more restrictive prison; and 2) equal protection in loss of UNICOR job where a co-worker with similar job performance issues was retained and white co-workers had greater privileges.

Generally speaking, constitutional violation claims against agents of the federal government fall under the Supreme Court case Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), to the extent that Bivens and its progeny allow for such claims. In Bivens, the Court held that even in the absence of statutory authorization, it would imply a damages remedy within the

narrow factual context of that case to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017).

Other than Bivens, the Supreme Court has implied a cause of action in only two other claims of constitutional violations: Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment Due Process Clause provided remedy for gender discrimination) and Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishment Clause). Three cases—Bivens, Davis and Carlson—represent the only instances where the Supreme Court has approved an implied damages remedy under the Constitution. Id. at 1855. Implied causes of action to enforce the Constitution "are not recognized Amendment by Amendment in a wholesale fashion." Wilson v. Libby, 498 F.Supp.2d 74, 86 (D.D.C. 2007), aff'd, 535 F.3d 697 (D.C. Cir. 2008). Rather, they "are context-specific." Id.; see also F.D.I.C. v. Meyer, 510 U.S. 471, 484 n.9 (1994) ("[A] Bivens action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others."). In Abbasi, the Supreme Court advised caution regarding the creation of implied causes of action to enforce the Constitution. Abbasi, 137 S. Ct. at 1857 (internal citation omitted). The Court "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Id.

Abbasi sets out the analytical framework to determine whether Mays' Bivens claims may proceed. First, the Court must determine whether this case is "different in a meaningful way from previous Bivens cases decided by [the] Court." Abbasi, 137

16

S. Ct. at 1859.  If so, the context is new and the Court then must conduct a "special factors analysis" before allowing a damage suit to proceed.  Id. at 1860.

A.  <u>Meaningful Differences in Mays' Retaliation, Due Process, and Equal Protection Claims from Previous Bivens Cases Decided by the Supreme Court Make the Context New and Mandate Special Factors Analysis</u>.

No Supreme Court case exactly mirrors the facts and legal issues presented by Mays.  <u>See</u> <u>id.</u> at 1859-60 (explaining that the comparison is to Supreme Court cases, not district or circuit court cases).  In <u>Abbasi</u>, the Supreme Court provided a non-exhaustive list of differences that are meaningful enough to make a context new, i.e., "the constitutional right at issue; the generality or specificity of the official action; ... or the presence of potential special factors that previous <u>Bivens</u> cases did not consider."  <u>Abbasi</u>, 137 S. Ct. at 1860.  In the specific context of this case, and regardless of which constitutional amendment is cited, Mays' allegations of false disciplinary charges in retaliation for grievances resulting in placement in SHU, loss of job, and prison transfer obviously are meaningfully different from other cases where the Supreme Court has afforded <u>Bivens</u> remedies.  As noted above, to date, the Supreme Court has recognized <u>Bivens</u> remedies only in the context of the Fourth, Fifth (gender discrimination), and Eighth Amendments.

Mays' claims are unlike the Fourth Amendment unreasonable seizure claim at issue in <u>Bivens</u>, the gender discrimination claim under the Fifth Amendment in <u>Davis</u>[5], and the deliberate indifference to medical needs claim under the Eighth

[5] In <u>Davis</u>, the Court implied a cause of action because there was no other remedial mechanism to address gender discrimination for a Congressional assistant because Title VII protections do not apply to Congress and reinstatement was impossible, as the Congressman had left office.

17

Amendment in <u>Carlson</u>. Thus, considering the foregoing, Mays' retaliation, SHU placement, job loss, and prison transfer claims are different in a meaningful way from previous cases recognizing a <u>Bivens</u> cause of action. A survey of the federal courts reveal that they too have found the same claims asserted by Mays to be "different in a meaningful way from previous <u>Bivens</u> cases". Therefore, this court must conduct the "special factors analysis" to determine if any factors counsel hesitation in finding an implied cause of action, a <u>Bivens</u> remedy, in this case.

    1.   First Amendment - Retaliation

  Relevant to Mays' claim, the Supreme Court "never [has] held that <u>Bivens</u> extends to First Amendment claims."[6] <u>Reichle v. Howards</u>, 566 U.S. 658 n.4 (2012); <u>also</u> <u>see</u> <u>Correctional Services Corporation v. Malesko</u>, 534 U.S. 61, 67-68 (2001) (noting that "we declined to create a <u>Bivens</u> remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); <u>Bush v. Lucas</u>, 462 U.S. 367 (1983) ("we have not found an implied damages remedy under the Free Exercise Clause"). In fact, the majority of the courts to consider the issue have not found an implied cause of action for retaliation under the First Amendment. <u>See</u> <u>Buenrostro v. Fajarado</u>, No. 18-15488, 770 F. App'x 807 (9th Cir. (Cal.) May 22, 2019) (retaliation for grievances, lawsuit); <u>Andrews v. Miner</u>,

---

[6] In <u>Patton v. Kimble</u>, the Fourth Circuit reversed a district court's dismissal of an inmate's <u>Bivens</u> action alleging First Amendment retaliation claim based on <u>Booker v. South Carolina Department of Corrections</u>, 855 F.3d 533, 545 (4th Cir. 2017). <u>See</u> <u>Patton v. Kimble</u>, 717 Fed. Appx. 271-72 (4th Cir. 2018). <u>Booker</u> was decided prior to <u>Abbasi</u> and did not address whether <u>Bivens</u> extends to the First Amendment. <u>Id.</u>

No. 114CV01842LSCHNJ, 301 F. Supp. 3d 1128 (N.D.Ala. Aug. 25, 2017) (retaliation for administrative complaint against officer); Jones v. Sposato, No. 17-3335, 783 F. App'x 214 (3rd Cir. (Pa.) Aug. 05, 2019) (retaliation for grievances); Badley v. Granger, No. 217CV00041JMSDLP, 2018 WL 3022653 (S.D.Ind. June 18, 2018) (retaliation for grievances); Hoffman v. Preston, No. 116CV01617LJOSABPC, 2019 WL 1865459 (E.D.Cal. Apr. 25, 2019) (false report after inmate reported officer); Rinaldi v. US, 2 No. 1:13-CV-450, 2019 WL 1620340 (M.D.Pa. Apr. 16, 2019) (retaliation for grievances); Sutter v. US, No. CV1707245SVWDFM, 2019 WL 1841905 (C.D.Cal. Mar. 12, 2019) (retaliation for grievances); Bellut v. Slocum, 2018 U.S. Dist. LEXIS 39616 (M.D.Pa. March 11, 2019) (retaliation for grievances); Brunson v. Nichols, No. 1:14-CV-2467, 2018 WL 7286410 (W.D.La. Dec. 07, 2018) (discipline for filing grievances); Rager v. Augustine, No. 5:15CV35/MW/EMT, 2017 WL 6627416 (N.D.Fla. Nov. 08, 2017), adopted by 2017 WL 6627784 (N.D.Fla. Nov. 8, 2017) (retaliation to coerce abandon grievance); Portway v. Bracamontes, No. 15-415 (DE 92) (D.Ariz. Sept. 7, 2018) (retaliation for grievance); Johnson v. Johnson, No. CV 1:17-00608, 2018 WL 4374231 (S.D.W.Va. June 05, 2018) (retaliation for grievances).

Federal Courts, also, have rejected Bivens claims for retaliatory transfer and prison job termination or reassignment. See Vega v. US, No. 13-35311, 724 F. App'x 536 (9th Cir. (Wash.) Feb. 07, 2018) (no First or Fifth Amendment claim for retaliatory transfer for past legal action); Kenney Carp No. 2:19-CV-05759-AB-KES, 2019 WL 3549816 (C.D.Cal. Aug. 02, 2019) (retaliatory transfer for filing grievances);

<u>Wilson v. Bolt</u>, No. 918CV00416DNHTWD, 2019 WL 5197335 (N.D.N.Y. May 28, 2019), <u>adopted by 2019 WL35617342</u> (NDNY May 28, 2019) (retaliatory placement in SHU for filing grievances – collecting cases that show majority of courts disallow First Amendment claims after <u>Abbasi</u>); <u>Azzara v. McFarland</u>, 2019 U.S. Dist. LEXIS 55924 (S.D.N.Y. March 29, 2019) (retaliatory transfer); <u>Rodriguez v. Hamel</u>, No. CV157980NLHKMW, 2018 WL 2254557 (D.N.J. May 17, 2018) (retaliatory transfer to new housing and reassign job); <u>Weigman v. Hamel</u>, No. CV158454NLHKMW, 2018 WL 2254558 (D.N.J. May 17, 2018) (retaliatory transfer to new housing and reassign job for filing grievances).

### 2. Fifth Amendment – Due Process

A survey of the federal courts finds the majority have not found an implied cause of action for due process under the Fifth Amendment. <u>Bistrian v. Levi</u>, 912 F.3d 79 (3rd Cir. Dec. 28, 2018) (punitive detention SHU and retaliation for complaints); <u>Acosta v. Shartle</u>, 18-216 (DE 7) (D.Ariz. May 15, 2018), <u>dismissed via stipulation</u> (due process in disciplinary context); <u>Dugan v. Scott</u>, No. 5:13-CV-235-OC-32PRL, 2019 WL 4737609 (M.D.Fla. Sep. 27, 2019) (retaliatory SHU placement for complaints); <u>deWilliams v. Groves</u>, No. EDCV170356GWPLA, 2019 WL 6481312 (C.D.Cal. Sep. 10, 2019) (retaliatory false incident report resulting in SHU placement); <u>Chambers v. Herrera</u>, No. 5:17-CV-2564-MWF-KES, 2019 WL 4391135 (C.D.Cal. July 09, 2019) (retaliation for grievances and due process violations in disciplinary proceedings); <u>McRae v. Lockett</u>, No. 5:17-CV-299-OC-02PRL, 2019 WL 2303264, at *1 (M.D. Fla. May 30, 2019) (retaliatory placement in SHU); <u>Silva v.</u>

Canarozzi, No. 3:18-CV-1771 (MPS), 2019 WL 1596346 (D.Conn. Apr. 15, 2019) (discrimination, due process, and retaliation); Pinkey v. Lockett, No. 516CV00103OC02PRL, 2019 WL 1254851 (M.D.Fla. Mar. 19, 2019) (retaliatory SHU placement); Robinson v. US, No. 4:18CV1817, 2019 WL 1255208 (N.D.Ohio Mar. 19, 2019) (due process in disciplinary proceeding and improperly placed in SHU); Sutter v. US, No. CV1707245SVWDFM, 2019 WL 1841905 (C.D.Cal. Mar. 12, 2019) (due process in discipline); Cannonier v. Skipper-Scott, Cannenier v. Skipper-Scott, No. 18 CIV. 2383 (LGS), 2019 WL 764795 (S.D.N.Y. Feb. 20, 2019) (improper placement in SHU); Jones v. Pullings No. 118CV01174SABPC, 2018 WL 4275357 (E.D.Cal. Sep. 06, 2018) (EDCA Sept. 6, 2018) (retaliatory SHU placement for challenging prior discipline); Thomas v. Matevousian, No. 117CV01592AWIGSAPC, 2018 WL 5099763 (E.D.Cal. Oct. 18, 2018), adopted by 2019 WL 266323 (due process in SHU placement and retaliation for complaints); Censke v. Fox, No. CIV-17-1116-C, 2018 WL 4623662 (W.D.Okla. Sep. 26, 2018), adopted by 2018 WL 4623662 (retaliatory placement in SHU for grievances); and Martinez v. Wiles, No. 16-123 (DE 135), (W.D.TX. Aug. 10, 2018) adopted by (DE 163) (improper placement in administrative segregation).

Federal Courts, also, have rejected Bivens claims for violation of due process in prison jobs and housing. See Grady v. Kinder, No. 18-CV-2159-JPG, 2019 WL 718534 (S.D.Ill. Feb. 20, 2019) (due process in termination of prison job); Johnson v. Merlak, No. 4:18-CV-1062, 2018 WL 5295876 (N.D.Ohio Oct. 25, 2018) (due process in denial of job assignment); Harris v. Dunbar, No. 217CV00536WTLDLP, 2018 WL 3574736 (S.D.Ind. July 25, 2018) (due process in more restrictive housing).

21

3. Fifth Amendment – Equal Protection.

A survey of the federal courts finds the majority have not found an implied cause of action for equal protection under the Fifth Amendment. See Gonzalez v. Velez, González v. Vélez, No. 16-1572, 864 F.3d 45 (1st Cir.(Puerto Rico) July 24, 2017) (workplace discrimination is new context – declines Bivens remedy); Thomas v. Paul, No. 16-CV-12-SM, 2019 WL 4451349 (D.N.H. Sep. 17, 2019) (retaliatory inmate job termination and racial discrimination); Davis v. UNICOR, No. 118CV01694LJOSABPC, 2019 WL 316868, at *1 (E.D. Cal. Jan. 24, 2019) (improper firing from UNICOR job due to disability); Brown v. Cooper, 2018 WL 6977594, adopted by 2019 WL 12943, (DMN Dec. 11, 2018) (racial discrimination and retaliatory discipline for grievances); Webster v. Spencer, No. CV 17-1472 (DLF), 318 F. Supp. 3d 313 (D.D.C. June 27, 2018) (Navy employee - no Bivens remedy for racial discrimination in workplace or retaliation for filing EEOC complaints); Turner v. Doe, No. CV155942RBKAMD, 2018 WL 2278096 (D.N.J. May 18, 2018), reconsideration denied, 2018 WL 6630511 (DNJ May 18, 2018) (racial discrimination in firing from prison job); Alexander v. Ortiz, No. CV 15-6981 (JBS-AMD), 2018 WL 1399302 (D.N.J. Mar. 20, 2018) (racial discrimination in prison job and retaliation for complaint).

4. Supervisory Liability

In its order on frivolity review, this Court permitted Bivens claims based on supervisory liability to proceed against Smith and Caraway. (DE 12, pp. 6-7). Federal Courts have declined to find an implied cause of action in the context of supervisory

22

liability. See Escamilla v. US, No. 217CV07748ODWMRWX, 2018 WL 1684307 (C.D.Cal. Apr. 04, 2018) (declined to find new context or Bivens remedy for alleged federal agent "improper" refusal to investigate claim); Ross v. White, No. 2:17-CV-04149-ODW-JC, 2018 WL 4808535 (C.D.Cal. Oct. 02, 2018) (agency officials alleged "mishandling" of claim).

Because May's claims are "different in a meaningful way from previous Bivens cases" and present a "new context", this Court must conduct a "special factors analysis" to determine if any factors counsel hesitation in finding an implied cause of action, a Bivens remedy, in this case.

B. Special Factors Caution Against Finding An Implied Cause of Action for Mays' Retaliation, Due Process, and Equal Protection Claims.

Abbasi makes clear that a Bivens remedy will not be available if there are "special factors counselling hesitation in the absence of affirmative action by Congress." Abbasi, 137 S. Ct. at 1857 (quoting Carlson v. Green, 446 U.S. 14, 18 (1980) (internal quotations omitted)). Turning to the "special factors analysis," this Court must consider whether "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857–58. Specifically, the "decision to recognize a damages remedy requires an assessment of its impact on governmental operations system wide" and the "projected costs and consequences to the Government itself" when the legal system is used to "bring about the proper formulation and implementation of public policies." Id. at 1858. To that end, "if there is an alternative

23

remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id.

Congress already has spoken with regard to Mays' claims of alleged retaliation and its supposed consequences. To the extent Mays alleges that retaliation affected his conditions of confinement or resulted in administrative detention, job loss, and/or prison transfer, Mays could have sought review of such acts pursuant to 28 C.F.R. § 542.10, et. seq. Also, any retaliation that may have affected Mays' conditions of confinement or resulted in SHU placement, job loss, and/or transfer may have been actionable in habeas corpus pursuant to 28 U.S.C. 2241. Finally, to the extent Mays' allegations could be considered ongoing retaliation, Mays could seek injunctive relief. See 18 U.S.C § 3626(a)(2); also see Malesko, 534 U.S. at 74 (stating that "unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, Mays has alternative remedies available to address his allegations of retaliation and its consequences. See Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018) (finding the inmate had alternative remedies available to address his First Amendment retaliation claim, in part, via the BOP's administrative remedy process), and cases cited above at Section III.A.(1 – 4).

24

Irrespective of whether an alternative remedy exists, a <u>Bivens</u> remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" <u>Abbasi</u>, 137 S. Ct. at 1857 (quoting <u>Carlson</u>, 446 U.S. at 18). In this case, the Court should hesitate to expand <u>Bivens</u> based on the following special factors: i) separation of powers concerns and congressional intent; ii) system wide impact and costs associated with creation of a <u>Bivens</u> remedy; and iii) the harmful effect on discharge of duties.

As to separation of powers concerns and congressional intent, Congress has enacted legislation surrounding prisoner rights, specifically the PLRA, and it is telling that Congress never has created a damages cause of action against a federal prison official in his or her individual capacity. As to the system wide impact and costs, the sheer volume of potential suits arising from the expansion of <u>Bivens</u> in the federal prison context presents a heavy burden and significant costs on the system. As to any harmful effect, there can be no question that creating a <u>Bivens</u> remedy in the context presented here would have a harmful effect on the discharge of official duties by BOP employees. For example, in this case, Carraway is being sued simply because he was the Regional Director of BOP, and Williams is being sued simply because he was the Administrative Remedy Coordinator. If individual officers could be sued, at risk of personal liability, for alleged retaliation or fabricated charges for enforcing prison policy or fulfilling their job requirements, there is no question that some officers might refrain from taking urgent and lawful action in discharging their duties for fear of claims of baseless retaliation or fabricated charges.

Simply put, Mays has other avenues for relief by way of BOP's administrative remedy scheme and statutory remedies. Whether Mays actually availed himself of the alternative remedial schemes is of no consequence -- the remedial scheme was available to him. Accordingly, the comprehensive protection of Mays' rights to grieve allegations of retaliation and fabricated disciplinary charges preclude extending <u>Bivens</u> to Mays' claims. Therefore, Mays' claims of retaliatory fabricated disciplinary charges resulting in administrative detention, loss of UNICOR job, and transfer to a more restrictive prison under the First, Fifth, and Eighth Amendments are not actionable under <u>Bivens</u> and should be dismissed. <u>See</u>, <u>e.g.</u>, <u>Muhammed v. Gehrke</u>, 2018 WL 1334936 (S.D. Ind. Mar. 15, 2018) (finding new context and declining to allow <u>Bivens</u> remedy for inmate who alleged that prison officials retaliated against him for filing requests for medical treatment); <u>Rager v. Augustine</u>, 2017 WL 6627416 (N.D. Fla. Nov. 8, 2017); <u>Farah</u>, 926 F.3d at 498-502 (based on the new context and presence of special factors, <u>Bivens</u> did not extend to use of "false information" allegedly violative of the Fifth Amendment Due Process Clause).

## V. MAYS CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED QUALIFIED IMMUNITY.

Federal executive officers and employees who are sued for constitutional torts may invoke the defense of qualified immunity. <u>Butz v. Economou</u>, 438 U.S. 478 (1978). Qualified immunity is an "immunity from suit rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

In <u>Batten v. Gomez</u>, 324 F.3d 288 (4th Cir. 2003), the Fourth Circuit exercised its opportunity to apply the qualified immunity standard set forth by the Supreme

26

Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). In <u>Batten</u>, the Court of Appeals framed the standard:

> As a "threshold question," a court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." If the answer is no, then the analysis ends; the plaintiff cannot prevail. If the answer is yes, then "the next, sequential step is to ask whether the right was clearly established" at the time of the events at issue. This determination must be made "in light of the specific context of the case, not as a broad general proposition." If the right was not "clearly established in the 'specific context of the case' - that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'" - then the law affords immunity from suit. Accordingly, the answer to both Saucier questions must be in the affirmative in order for a plaintiff to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds.

<u>Batten</u>, 324 F.3d at 293-94 (internal citations omitted).

The analysis was relaxed in the Supreme Court's decision in <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). In <u>Pearson</u>, the Supreme Court clarified that the rigid two-step process in <u>Saucier</u>, was no longer mandatory. Under either of the <u>Saucier</u> steps, it is clear that the facts as alleged by Mays fail to show a violation of a constitutional right. As previously stated, Mays cannot establish First or Fifth Amendment violations, in particular, retaliation or unconstitutional discipline, loss of job, or transfer. Accordingly, defendants are entitled to qualified immunity and Mays' <u>Bivens</u> claims should be dismissed. Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons stated above, the Court should dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), all <u>Bivens</u> claims because (1) Mays failed to exhaust

mandatory administrative remedies under the Prison Litigation Reform Act (PLRA); (2) Mays failed to plead constitutional violations; 3) Mays failed to plead claims compensable under <u>Bivens</u> post-<u>Abbasi</u>, and 4) the individual defendants are entitled to qualified immunity.

Respectfully submitted this 7th day of January, 2020.

ROBERT J. HIGDON, JR.
United States Attorney


By:  /s/ Sharon C. Wilson
    SHARON C. WILSON
Attorney for Defendants
Wells Fargo Building
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4026
Facsimile: (919) 856-4821
N.C. Bar Number: 18435
Sharon.Wilson2@usdoj.gov

28

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this 7th day of January, 2020, served a copy of the foregoing upon the below-listed party or parties electronically using the CM/ECF system or by placing a copy of the same in the U.S. Mail, addressed as follows:

Joseph Randolph Mays
No. 43487-007
Gilmer-FCI
PO Box 6000
Glenville, WV  26351

BY:  /s/ Sharon C. Wilson
Assistant United States Attorney
Civil Division
Attorney for Defendants
Wells Fargo Building
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4026
Facsimile: (919) 856-4821
N.C. Bar Number: 18435
Sharon.Wilson2@usdoj.gov

29