IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3186-FL

| | |
|---|---|
| JOSEPH RANDOLPH MAYS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| T.B. SMITH, S. MA'AT, JAMIE | ) |
| HOSKINS, V. WILLIS, J. HALFAST, R. | ) |
| MARTIN, LT. CHRISTOPHER, LT. K. | ) |
| HENDRY, OFFICER V. WILKINS, | ) |
| OFFICER GLASS, OFFICER SLAYDON, | ) |
| OFFICER LASSITER, J. CARAWAY, and | ) |
| JOHN/JANE DOES, | ) |
| | ) |
| Defendants.[1] | ) |
| -- | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Interested Party. | ) |

ORDER

This matter is before the court on defendants' motions to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) (DE 53), and to strike plaintiff's sur-reply in opposition to same (DE

66). The motion to dismiss was fully briefed and in this posture the issues raised are ripe for

ruling. For the reasons stated below, the court grants the motion to dismiss and denies as moot

the motion to strike.

## STATEMENT OF THE CASE

Plaintiff, a D.C. Code offender proceeding pro se, commenced this action by filing

---

[1]  The court has constructively amended the caption of this order to reflect dismissal of formerly named defendants Ian Connors, Cpt. T. Leslie, Susan Dickerson, and H. Williams by orders entered February 27, 2019, and December 29, 2019.

complaint on July 23, 2018, asserting claims for violations of his civil rights pursuant to <u>Bivens v.</u> <u>Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Following an initial period of frivolity review, the court allowed plaintiff to file the operative amended complaint on October 29, 2019, asserting the following claims for relief: 1) First Amendment claim alleging defendants retaliated against him for filing grievances, 2) Fifth Amendment claims alleging that defendants placed him in administrative detention without cause, terminated him from his UNICOR position, and transferred him to another correctional institution without providing notice of the alleged misconduct or an opportunity to rebut the allegations, and 3) Fifth Amendment claim alleging racial discrimination.

The court, however, dismissed upon frivolity review plaintiff's claims alleging denial of medical care, unconstitutional conditions of confinement, violations Federal Bureau of Prisons ("FBOP") policies, denial of access to the courts, and unfair administrative remedy procedures. The defendants, sued in their individual capacities only, are T.B. Smith ("Smith"), S. Ma'at ("Ma'at"), Jamie Hoskins ("Hoskins"), V. Willis ("Willis"), J. Halfast ("Halfast"), R. Martin ("Martin"), Lt. Christopher ("Christopher"), Lt. K. Hendry ("Hendry"), officer V. Wilkins ("Wilkins"), officer Glass ("Glass"), officer Slaydon ("Slaydon"), officer Lassiter ("Lassiter"), J. Carraway ("Caraway"), and unnamed officials designated John and Janes Does.

Defendants filed the instant motion to dismiss on January 7, 2020, arguing plaintiff's complaint should be dismissed because it fails to state a claim upon which relief can be granted, and because plaintiff failed to exhaust administrative remedies prior to filing this action. In support, defendants rely upon memorandum of law, declaration Mallory Storus, an attorney at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"), and plaintiff's

2

administrative remedy records. That same day, the court provided plaintiff notice, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that it may construe the motion as one for

summary judgment because the motion relied upon matters beyond the pleadings. Plaintiff

responded in opposition on October 24, 2019. In support, plaintiff relies upon his personal

declaration and exhibits thereto comprising his FBOP administrative remedy records, medical

records, and records pertaining to his placement in administrative detention and transfer.

Defendants filed reply in further support of the motion to dismiss on April 7, 2020.

On May 22, 2020, plaintiff filed unauthorized sur-reply responding to issues raised in

defendants' reply brief. On June 4, 2020, defendants filed motion to strike plaintiff's sur-reply.

Plaintiff did not respond to the motion to strike.

## STATEMENT OF THE FACTS

The facts, as alleged in plaintiff's complaint, may be summarized as follows. Plaintiff is

a D.C. Code offender in FBOP custody, and he was housed at FCI-Butner and subsequently the

Federal Correctional Institution in Gilmer, West Virginia ("FCI-Gilmer") during the relevant time

period. (Am. Compl. (DE 1) ¶ 3). On June 20 2016, plaintiff submitted administrative remedy

request to the FBOP regional director's office, complaining that defendant Hoskins, the FCI-

Butner UNICOR[2] optics factory manager, "engaged in racial discrimination, disparate treatment,

harassment, abuse of authority, and defamation of character against plaintiff." (Id. ¶¶ 6, 22; Am.

Compl Ex. 1 (DE 45-2) at 4).[3] Plaintiff further alleged that defendant Hoskins gave "preferential

---

[2]        UNICOR is an FBOP employment program. (See, e.g. Am. Compl. (DE 45) ¶ 3).

[3]        Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page
number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if
any, specified on the face of the underlying document.

treatment" to other inmates. (Am. Compl. Ex. 1 (DE 45-2) at 5). On June 25, 2016, plaintiff filed another administrative remedy request with the regional director complaining that defendants Hoskins and another FBOP official retaliated against him by accusing him of malingering and using abusive and demeaning language. (Id. at 4). These grievances, however, were rejected because they did not raise sensitive issues and thus plaintiff was required to submit them at the institution level. (See Am. Compl. (DE 45) ¶¶ 22-26; Am. Compl. Ex. 2 (DE 45-2) at 6-7).

On July 12, 2016, plaintiff resubmitted the foregoing administrative remedy requests at FCI-Butner on "BP-8" forms. (See Am. Compl. Ex. 3 (DE 45-2) at 8). Defendant Martin, plaintiff's unit counselor, forwarded the BP-8 forms to defendant Hoskins to attempt informal resolution of plaintiff's complaints. (Am. Compl. (DE 45) ¶¶ 9, 32). On July 29, 2016, defendants Hoskins and Dickerson, a UNICOR optics factory supervisor, met with plaintiff to discuss his concerns. (Id. ¶¶ 33-34). During that meeting, defendants Hoskins and Dickerson "reassured" plaintiff that he would not be transferred to another correctional facility. (Id. ¶ 34).

On August 10, 2016, defendant Ma'at, the associate warden at FCI-Butner, confronted plaintiff and accused him of "giving his secretary a hard time" in reference to processing another administrative remedy request. (Id. ¶ 39). Plaintiff disagreed that he gave defendant Ma'at's secretary a hard time, noting that he only expressed his disagreement with the secretary's position on the procedures for filing his administrative remedy request. (Id. ¶¶ 40-41).

On August 11, 2016, defendants Hoskins and Ma'at met with plaintiff in the dining hall to address plaintiff's concerns about his UNICOR position. (Id. ¶¶ 43-50). Plaintiff informed defendant Ma'at that defendant Hoskins had withheld information from plaintiff that was necessary to complete his work as a lead mechanic. (Id. ¶¶ 3, 49-50). Defendant Hoskins

4

responded that he provided the information to another inmate who had "IT experience" but failed to acknowledge that plaintiff was the lead mechanic, had been trained on the relevant machines by an outside contractor, and had prior experience working in an information technology position. (Id. ¶¶ 54-60). Defendant Hoskins then allegedly falsely accused plaintiff of "starting to disrupt the orderly running of the facility." (Id. ¶ 64). Plaintiff responded by stating "we have two choices. I can [file an administrative remedy request] or - -"[4] and before plaintiff could finish the sentence defendant Ma'at stated, "or we can fire you! If you [are not] trained, we can fire you and get someone else." (Id. ¶¶ 66-67). Defendant Ma'at then stated, "you [do not have a] union" in an allegedly intimidating and arrogant manner. (Id. ¶ 69). Plaintiff then asked whether his co-worker would be held accountable,[5] and defendant Hoskins replied, "what do you want me to do, this is prison." (Id. ¶¶ 70-71). Defendant Ma'at then stated, "fire them both! We can fire both of you and get someone to replace both of you." (Id. ¶ 73). Plaintiff then calmly walked out of the dining hall. (Id. ¶ 75). Plaintiff, who is African American, was fired from his position, but his white co-worker was not. (See id. ¶¶ 74, 197-204).

Plaintiff was accused of making threatening comments to staff and threatening to cause a work stoppage during the meeting with defendants Ma'at and Hoskins. (Id. ¶¶ 76, 89; Am. Compl. Ex. 42 (DE 45-2 at 71).[6] Later that same day, defendants Christopher and Hendry, FCI-

---

[4]      If plaintiff had been allowed to finish the sentence, he would have said "or we can work this out." (Am. Compl. (DE 45) ¶ 67).

[5]      Plaintiff suggests that his co-worker also should have been reprimanded for "disrupting" the orderly running of the UNICOR program. (See Am. Compl. (DE 45) ¶¶ 70-71).

[6]      Defendants Ma'at and Hoskins alleged specifically that plaintiff "became agitated and made threatening comments" during the meeting, which included the following: "[Plaintiff stated, 'He would do what he had to do.' He said he was the one who works on the equipment in UNICOR, and he could cause problems in the factory." (Am. Compl. Ex. 42 (DE 45-2) at 71). Plaintiff denies making these comments. (See, e.g., Am. Compl. (DE 45) ¶ 89).

5

Butner corrections officers, drafted an administrative detention order requiring that plaintiff be transferred to the special housing unit ("administrative detention"). (Am. Compl. (DE 45) ¶¶ 10, 80-81). The administrative detention order, however, did not specify the reason for plaintiff's placement in administrative detention. (Id.).

Defendants Christopher, Glass, and Wilkins then approached plaintiff at his workstation in a utility room and informed him he was being sent to administrative detention. (Id. ¶ 82). At the time, defendant Wilkins was an FCI-Butner corrections officer and defendant Glass was a special investigations supervisor assigned to FCI-Butner. (Id. ¶¶ 13-14). When they arrived at the holding cell, defendant Glass informed plaintiff that "someone got in their feelings because you filed a grievance." (Id. ¶ 85). Defendant Glass, however, did not explain to plaintiff the precise reason he was placed in administrative detention. (Id. ¶¶ 90-91).

Plaintiff was terminated from his UNICOR position on August 11, 2016. (Compl. Ex. 17 (DE 45-2) at 31). The termination notice states plaintiff was discharged because he made threatening comments to defendants Ma'at and Hoskins and threatened a UNICOR work stoppage. (Id.).

On August 13 and 17, 2016, defendant Halfast, plaintiff's assigned FBOP case manager, visited plaintiff in administrative detention. (Id. ¶ 92-94). Defendant Halfast, however, did not explain to plaintiff why he was placed in administrative detention. (Id.). On August 26, 2016, defendant Glass informed plaintiff "off the record" that defendants Ma'at and Hoskins did not want plaintiff to return to the general population at FCI-Butner, and that he would be transferred. (Id. ¶ 95). Defendant Glass also informed plaintiff that the investigation results into the incident with defendants Ma'at and Hoskins were private and could not be disclosed to plaintiff. (Id. ¶ 96).

6

On September 2, 2016, plaintiff saw defendant Slaydon, a special investigations supervisor assigned to FCI-Butner, and asked him why he had been placed in administrative detention. (Id. ¶¶ 15, 107-08). Defendant Slaydon responded "it's complicated" but did not further explain the basis of plaintiff's transfer to administrative detention. (Id. ¶ 108).

On September 14, 2016, plaintiff submitted a "request to staff," which was forwarded to defendants Halfast and Willis [7] plaintiff's unit manager, requesting transfer to the Federal Correctional Institution in Petersburg, Virginia so that he could be close to his father. (Id. ¶ 119). That same day, defendant Willis visited plaintiff in administrative detention and informed him the investigation was complete and plaintiff would be transferred to an appropriate medium security institution. [8] (Id. ¶¶ 123-24). Defendant Willis also advised plaintiff that he would not be charged with a disciplinary offense based on the comments he made to defendants Ma'at and Hoskins. (Id. ¶ 125). Defendant Willis, however, refused to provide plaintiff with further details about the investigation, or explain specifically why he was being transferred. (Id. ¶ 126).

On September 16, 2016, while he remained housed in administrative detention at FCI-Butner, plaintiff became dizzy and lightheaded, and fainted in his cell. (Id. ¶ 128). Plaintiff also developed gastrointestinal problems while housed in administrative detention at FCI-Butner. (Id. ¶ 157). Prior to his administrative detention, plaintiff did not have gastrointestinal problems or issues with lightheadedness. (Id. 159).

On September 28, 2016, defendants Smith, Ma'at, Hoskins, Glass, Slaydon, Halfast,

---

[7]      Defendant Willis is plaintiff's unit manager. (Am. Compl. (DE 45) ¶ 7).

[8]      Notably, plaintiff was housed in the medium security facility at FCI-Butner prior to his placement in administrative detention. (Am. Compl. (DE 45) ¶ 3).

7

Willis, and others falsified plaintiff's transfer form (FBOP Form "EMS-409.051") by stating plaintiff "has maintained poor institutional adjustment at FCI-Butner." (Id. ¶ 138; Compl. Ex. 11 (DE 45-2) at 21). The transfer form also includes the following "rationale" for plaintiff's transfer:

> On August 11, 2016, at approximately 11:40 a.m., [plaintiff] confronted staff at mainline regarding some concerns he had. During this confrontation, [plaintiff] became visibly agitated and made threatening comments towards staff. [Plaintiff] stated, "he would do what he had to do" and "he could cause problems in UNICOR." During this same time, there was information circulating throughout the Bureau of Prisons regarding a proposed work stoppage on September 9, 2016. [Plaintiff] was placed in Administrative Detention pending a[] [special investigative service, "SIS"] investigation. The investigation determined [plaintiff] has animosity towards certain staff, because he didn't get "his way" in certain situations and due to flyers circulating pertaining to a work stoppage slated for September 9, 2016. The investigation further revealed that [plaintiff] attempted to manipulate a lower functioning inmate, with violent tendencies, into believing that staff and inmates were making fun of him. During one conversation, [plaintiff] picked up a hammer, slammed it down and stated that a staff member was going to get the hammer. It is the recommendation of the SIS office that [plaintiff] be transferred to an institution outside of [FCI-Butner]. [Plaintiff] was recently re-classified as an 8-point HIGH security inmate with a MEDIUM security management level. Unit team is requesting a transfer to any appropriate MEDIUM security facility.

(Am. Compl. Ex. 11 (DE 45-2) at 21).[9] Plaintiff is concerned that his petition for clemency will be denied as a result of the foregoing (allegedly false) findings and transfer order. (Am. Compl. (DE 45) ¶ 143).

Plaintiff was transferred to FCI-Gilmer on October 21, 2016. (Id. ¶ 152). While in transit to FCI-Gilmer, plaintiff's father died. (Id. ¶ 153). Plaintiff had not been able to speak to his father for approximately two months prior to his death because he was in administrative detention. (Id. ¶ 156). Plaintiff arrived at FCI-Gilmer, his final transfer destination, on November 1, 2016.

---

[9] As discussed above, plaintiff disputes this characterization of his behavior at FCI-Butner, including his statements during the incident with defendants Hoskins and Ma'at. The court adopts plaintiff version for purposes of ruling on the instant motion to dismiss but includes the transfer order here for appropriate context.

(Id. ¶ 161).

## DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Defendants additionally rely on matters outside the pleadings in support of their argument that plaintiff failed to exhaust administrative remedies prior to filing this action. Accordingly, the court construes the filing in that part as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Fed R. Civ. P. 12(d). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment

9

"bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus,

10

judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

1.     Plaintiff's Claims

Before turning to defendants' arguments in support of dismissal, the court summarizes the remaining claims at issue in this action. As noted above, the court dismissed all but three claims in its October 29, 2019, frivolity order: 1) retaliation; 2) due process, and 3) equal protection. (DE 44 at 7).

Plaintiff's first surviving claim alleges that defendants Ma'at and Hoskins retaliated against him for filing administrative grievances by fabricating allegations that he made threatening comments, firing him from his UNICOR position, placing him in administrative detention, and transferring him to a higher-security institution. (Am. Compl. (DE 45) ¶¶ 5-6, 171-72). Defendants Smith and Caraway,[10] an FBOP administrator, also allegedly failed to intervene or otherwise protect plaintiff from the foregoing acts of retaliation. (Id. ¶¶ 4, 19, 174-75, 200-01).

Plaintiff's second remaining claim alleges violations of the Fifth Amendment's Due Process Clause. Plaintiff alleges numerous due process violations, based upon the factual allegations summarized below:

1)     Defendants Smith, Ma'at, Hoskins, Glass, Slaydon, Christopher, Hendry, Willis, and Halfast fabricated disciplinary charges against plaintiff. (Id. ¶ 177).

---

[10]     Defendant Caraway is the regional director of the FBOP's Mid-Atlantic Regional Office.

11

2)    Defendants Christopher and Hendry allegedly failed to notify plaintiff of the reason he was placed in administrative detention.   (Id. ¶ 179).

3)    Defendants Smith, Ma'at, Hoskins, Willis, and Halfast allegedly fired plaintiff from his UNICOR position without giving plaintiff a reason for his termination.   (Id. ¶ 180).

4)    Defendants Smith, Ma'at, Hoskins, Willis, and Halfast allegedly fabricated allegations that plaintiff threatened staff members and circulated flyers promoting a labor strike at the FCI-Butner.   (Id. ¶ 181).

5)    Defendants Smith, Ma'at, Lassiter, Hoskins, Willis, Halfast, Martin, Glass, Slaydon, and the Doe defendants allegedly failed to allow plaintiff to attend hearings reviewing his placement in the special housing unit.   (Id. ¶ 182).

6)    Defendants Smith, Ma'at, Hoskins, Christopher, Hendry, Glass, Slaydon, Lassiter, Willis, Halfast, and Martin allegedly failed to inform plaintiff of the disciplinary charges against him and his reason for placement in administrative detention.   (See id. ¶ 183).

7)    Defendants Smith, Ma'at, Hoskins, Christopher, Hendry, Glass, Slaydon, Lassiter, Willis, Halfast, and Martin transferred plaintiff to a new correctional facility without a factual finding of guilt.   (Id. ¶ 184).

8)    Defendants Smith, Ma'at, Hoskins, Willis, and Halfast conspired together, on September 28, 2016, to provide false information on plaintiff's transfer order, which resulted in plaintiff's transfer to a new correctional facility.   (Id. ¶ 185).

9)    Defendant Glass allegedly rejected plaintiff's request to view a special investigation report related to his placement in administrative detention.   (Id. ¶ 186).

10)   Defendants Smith and Caraway allegedly failed to conduct an investigation into plaintiff's claims of retaliation and staff misconduct, and thus failed to prevent plaintiff's wrongful administrative detention and subsequent transfer.   (Id. ¶ 187).

11)   Defendants Smith, Ma'at, Hoskins, Slaydon, Glass, Christopher, Hendry, Willis, Halfast, Martin, and Lassiter allegedly kept plaintiff confined for 71 days in administrative detention without a factual finding of guilt, conducting disciplinary proceedings, or producing a report validating such placement.   (Id. ¶ 188).

12)   Defendants Willis, Halfast, Martin, Wilkins, Christopher, Glass, and Slaydon allegedly refused to correct the false allegations made by defendant Smith that

12

plaintiff had poor institutional adjustment, which was used to place plaintiff in administrative detention and ultimately transfer him to FCI-Gilmer.   (Id. ¶ 189).

13) Defendants Smith, Ma'at, and Hoskins allegedly fired plaintiff from his UNICOR position and directed plaintiff's transfer to FCI-Gilmer.   (Id. ¶ 192).

14) Defendants Smith, Ma'at, and Hoskins allegedly violated plaintiff's due process rights by preventing plaintiff from remaining at FCI-Butner and participating in FBOP programming available at that institution.   (Id. ¶ 193).

15) Defendant Ma'at allegedly failed to investigate an incident in which plaintiff was denied information necessary to complete his UNICOR employment duties.   (Id. ¶ 194).

Plaintiff's final remaining claim alleges violations of his equal protection rights under the Fifth Amendment.   With respect to this claim, plaintiff alleges defendants Smith, Ma'at, Hoskins, Willis, and Halfast discriminated against him by firing him from his UNICOR position, placing him in administrative detention, and transferring him to FCI-Gilmer solely on the basis of engaging in the "protected activity" of filing grievances while permitting inmates who did not engage in protected activity to remain employed and housed at FCI-Butner.   (Id. ¶¶ 197, 199).   Plaintiff further alleges defendants Ma'at and Hoskins treated white inmates who held similar UNICOR positions preferentially by not firing them for the same reasons that plaintiff was fired or allowing those inmates to withhold important information from plaintiff regarding his position.   (Id. ¶¶ 200, 202, 204).   Defendant Hoskins also provided important tools for plaintiff's white co-worker while refusing to provide such tools to plaintiff.   (Id. ¶ 201).

2.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that plaintiff failed to exhaust administrative remedies before filing this action.   See Jones v. Bock, 549 U.S. 199, 216 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Custis v. Davis, 851 F.3d 358, 361

13

(4th Cir. 2017). The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218. And the PLRA mandates "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 83, 90. Thus, an inmate has not properly exhausted administrative remedies unless he receives a decision "on the merits" of his grievance and complies with all procedural requirements for appealing the result. See id. at 90.

The only exception to mandatory exhaustion occurs when the administrative remedy procedure is unavailable to the inmate. See 42 U.S.C. § 1997e(a); Ross, 136 S. Ct. at 1858-60. An administrative remedy process is unavailable if: 1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination,

14

misrepresentation, or intimidation." <u>Ross</u>, 136 S. Ct. at 1858-60.

The FBOP provides a four-step administrative remedy procedure. The first step in the process requires an inmate to present his issue to staff in an attempt at informal resolution. <u>See</u> 28 C.F.R. § 542.13. If informal resolution is unsuccessful, an inmate may submit a formal written administrative remedy request to the warden using a BP-9 form within 20 calendar days from the date on which the incident occurred. <u>See</u> 28 C.F.R. § 542.14. The inmate may attach to the BP-9 form "up to one" continuation page and supporting exhibits. <u>Id.</u> § 542.14(c)(3).

If an inmate is dissatisfied with the warden's response, he then may appeal to an FBOP regional director within 20 calendar days of the date the warden signed the response, using a BP-10 form. 28 C.F.R. § 542.15(a). The final administrative appeal is made to the FBOP's general counsel, within 30 days of the date the regional director signed the response, using a BP-11 form. <u>See</u> <u>id.</u> The inmate also may attach only one continuation page to the BP-10 or BP-11 forms, and he must include full copies of the institution request and response with any appeal. <u>Id.</u> § 542.15(b).

The time limits for submitting the initial administrative remedy request and appeals to the regional director or FBOP general counsel may be extended if the inmate "demonstrates a valid reason for delay" which generally requires a showing that "a situation . . . prevented the inmate from submitting the request within the established time frame." <u>Id.</u> § 542.15(a); 28 C.F.R. § 542.14(b).

Additionally, the inmate may send the initial administrative remedy request directly to the regional director (bypassing the warden) if the inmate: "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at

15

the institution."   28 C.F.R. § 542.14(d)(1).   In that event,

> [if]f the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.

Id.

Here, in response to the instant motion, plaintiff argues he exhausted administrative remedies or defendants thwarted his attempts at exhaustion with respect to the following administrative remedy requests:   1) Request #868290; 2) Request #868292; 3) Request #872015; 4) Request #879805; 5) Request #900930; and 6) Request #909380.

Request #868290:   Plaintiff filed this request for administrative remedy with the FBOP's Mid-Atlantic Regional Office on June 25, 2016, complaining that defendant Hoskins and another FBOP staff member retaliated against him for filing grievances by accusing him of "malingering and [using] abusive and demeaning language."   (Am. Compl. Ex. 1 (DE 42) at 5).   Where this administrative remedy request does not place defendants on notice of the factual allegations or the specific legal claims alleged in the operative amended complaint,[11] plaintiff may not rely on it to establish exhaustion of administrative remedies.   See, e.g., Moore v. Bennette, 517 F.3d 717, 728-29 (4th Cir. 2008) (noting grievance must give defendants a "fair opportunity to address" the alleged misconduct); see also Jones, 549 U.S. at 219.

---

[11]     Plaintiff's amended complaint alleges repeatedly that he was subject to retaliation for filing grievances by his termination from his UNICOR position, placement in administrative detention, and transfer.   (See Am. Compl. (DE 45) ¶¶ 170-204).   Request #868290 does not address the specific instances of retaliation alleged in the complaint, all of which allegedly occurred after plaintiff filed this administrative remedy request on June 25, 2016.

Request #868292: Plaintiff filed this request for administrative remedy with the Mid-Atlantic Regional Office on June 20, 2016, complaining that defendant Hoskins racially discriminated against him by giving preferential treatment to his co-workers. (Am. Compl. Ex. 1 (DE 45-2) at 4). This administrative remedy request adequately placed defendants on notice of plaintiff's equal protection claim. (See id.). Defendants argue plaintiff failed to exhaust the request because he submitted it directly to a regional office, it was returned to him for resubmission at the institution level, and plaintiff failed to resubmit it. Plaintiff, however, has submitted sufficient evidence to create a genuine issue of material fact as to whether defendants interfered with his ability to resubmit the grievance at the institution level. Plaintiff, for example, testifies by way of verified declaration that defendants Martin and Hoskins failed to return "BP-8" forms to him necessary to resubmit the request. (See Pl.'s Decl. (DE 62-1) ¶ 6; see also Pl.'s Resp. (DE 62 ¶¶ 1-17).[12] Accordingly, genuine issues of material fact preclude dismissal of plaintiff's equal protection claim on grounds of administrative exhaustion. See Ross, 136 S. Ct. at 1858-60 (discussing exceptions to mandatory exhaustion under PLRA, including where "prison administrators thwart inmates from taking advantage of a grievance process"); see also Hill v. Haynes, 380 F. App'x 268, 270 (4th Cir. 2010). Request #868292, however, did not place defendants on notice of plaintiff's remaining due process or retaliation claims. (See Am. Compl. Ex. 1 (DE 45-2) at 4).

---

[12] Defendants argue this testimony should not be credited in light of plaintiff's record of submitting numerous requests for administrative remedies and his extensive knowledge of the regulations governing the FBOP's administrative remedy program. The court, however, must accept plaintiff's version of events for purposes of ruling on the instant motion unless his account is blatantly contradicted by the record such that no reasonable jury could believe it. See Scott v. Harris, 550 U.S. 372, 380 (2007). Plaintiff's version is not blatantly contradicted by the record in this instance.

<u>Request #872015</u>:  Plaintiff filed this request for administrative remedy with the FCI-Butner Warden on August 2, 2016, complaining that his previous administrative remedy request was improperly denied because his exhibits were considered continuation pages.  (Am. Compl. Exs. 6, 23 (DE 45-2) at 13, 39).[13]  Where this request does not address the factual allegations or legal claims at issue in this action, plaintiff may not rely on it to establish exhaustion of administrative remedies.  <u>See</u> <u>Moore</u>, 517 F.3d at 728-29; <u>see also</u> <u>Jones</u>, 549 U.S. at 219.

<u>Request #879805</u>:  Plaintiff filed this request for administrative remedy with the Mid-Atlantic Regional Office on September 29, 2016, complaining that defendants Ma'at and Hoskins retaliated against him for filing grievances by terminating him from his UNICOR position, placing him in administrative detention, and transferring him to FCI-Gilmer.  (Am. Compl. Ex. 30 (DE 45-2) at 49).  While this request sufficiently places defendants on notice of plaintiff's retaliation claim, plaintiff fails to address defendants' argument that the request was not properly exhausted. The regional office returned the request to plaintiff because it was not sensitive.  (Am. Compl. Ex. 31 (DE 45-2) at 50).  Plaintiff appealed the regional office's decision to the FBOP Office of General Counsel, which upheld the decision that the request should have been filed at the institution level.  (Am. Compl. Ex. 37 (DE 45-2) at 60).  At that point, plaintiff was required to resubmit the request at the institution level.  <u>See</u> 28 C.F.R. § 542.14(d)(1).  Plaintiff, however, does not point to any evidence in the record establishing he complied with this procedural requirement.  Accordingly, plaintiff failed to "properly" exhaust Remedy #879805.  <u>See</u> <u>Woodford</u>, 548 U.S. at 83, 90 (holding PLRA requires "proper exhaustion" and "untimely or

_____

[13]     Plaintiff did not include an exhibit number on the BP-8 form filed on page 13 of the amended complaint's supporting exhibits.  The labeling on pages 12 and 14, however, makes clear that the document on page 13 was intended to be exhibit six.  (<u>See</u> DE 45-2 at 12-14).

18

otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement).

Request #900939:   Plaintiff filed this request for administrative remedy with the FCI-Gilmer warden on May 5, 2017, complaining that that defendants Ma'at, Hoskins, and Smith terminated him from his UNICOR position, placed him in administration detention, and transferred him to FCI-Gilmer in retaliation for filing grievances.   (Mallory Decl. (DE 55) ¶ 16; Pl.'s Resp. Ex. 73 (DE 62-2) at 52-61).   The request was rejected at the institution level as untimely. (Mallory Decl. (DE 55) ¶ 16).   Plaintiff appealed to the Mid-Atlantic Regional Office, which rejected the request as untimely and because plaintiff failed to provide a copy of the institution-level request.   (Id.).   Plaintiff then appealed to the Office of General Counsel, which instructed him to fix the errors described in the regional office response, and resubmit the request at that level.   (Id.).   Plaintiff, however, failed to do so.   (Id.).[14]   Accordingly, because plaintiff failed to follow the FBOP's procedural instructions for resubmitting this request, plaintiff did properly exhaust this request.   See Woodford, 548 U.S. at 83, 90.

Request #909380:   Plaintiff filed this request for administrative remedy with the FCI-Gilmer warden on June 7, 2017, complaining that defendants Smith, Hoskins, Ma'at, and others denied him "due process and falsified evidence" by using false justifications for placing plaintiff in administrative detention and ultimately transferring him to FCI-Gilmer.   (Pl.'s Resp. Exs. 77-78 (DE 62-2) at 64-66).   Plaintiff also alleged that defendants Smith, Hoskins, and Ma'at denied him due process by placing him in administrative detention and transferring him without providing notice of the "charges" of misconduct lodged against him.   (Pl.'s Resp. Ex. 77 (DE 62-2) at 65).

---

[14]     Plaintiff again offers no response to defendants' evidence establishing he failed to resubmit the request at the regional office level.

According to plaintiff, the FCI-Gilmer warden did not respond to the request, and he therefore appealed the effective denial of the request to the Mid-Atlantic Regional Office, and then to the Office of General Counsel. (Pl.'s Resp. Exs. 79-80 (DE 62-2) at 67-68); see also 28 C.F.R. § 542.18. Defendants' evidence suggests that plaintiff submitted this request directly to the Mid-Atlantic regional director, who denied the request because it should have been filed initially at the institution level. (Storus Decl. (DE 55) ¶ 17). The Office of General Counsel also rejected the request because it was not initially submitted at the institution level. (Id.). Because there are disputed issues of fact with respect to whether plaintiff submitted this request at the institution level, a reasonable jury could conclude that FBOP administrators thwarted plaintiff's attempts to exhaust this grievance by ignoring the request submitted to the FCI-Gilmer warden.[15] See Ross, 136 S. Ct. at 1858-60; (Pl.'s Resp. Ex. 78 (DE 62-2) at 66 (BP-9 form submitted to FCI-Gilmer warden)). Accordingly, the court will not dismiss on administrative exhaustion grounds plaintiff's due process claims alleging he was placed in administrative detention based on falsified evidence and without notice of the charges.

In summary , with respect to defendants' motion for summary judgment based upon failure to exhaust administrative remedies, the court finds plaintiff's claim for retaliation was not properly exhausted. Genuine issues of material fact, however, preclude dismissal of plaintiff's equal protection and due process claims (to the extent based on falsified evidence or failure to provide notice) on administrative exhaustion grounds.

---

[15] Defendants did not respond to plaintiff's arguments regarding Request #909380.

20

3.      Merits

Even assuming plaintiff exhausted administrative remedies, his claims seeking monetary damages[16] are not cognizable under Bivens.   In Bivens, the Supreme Court recognized a damages remedy against federal officers for Fourth Amendment violations where the officers searched a residence and arrested the plaintiff without a warrant or probable cause, in violation of the Fourth Amendment.   403 U.S. at 398-98.   Since Bivens was decided in 1971, the Supreme Court has authorized a damages remedy under Bivens in only two additional contexts:   1) a Fifth Amendment equal protection claim alleging gender discrimination in congressional employment, see Davis v. Passman, 442 U.S. 228 (1979); and 2) an Eighth Amendment claim by a federal prisoner alleging prison officials were deliberate indifferent to his serious medical needs by failing to treat his asthma, see Carlson v. Green, 446 U.S. 14 (1980).   The court, however, "has declined to countenance Bivens actions in any additional context.   See Tun-Cos v. Perrotte, 922 F.3d 514, 520-21 (4th Cir. 2019) (collecting cases).

Recently, the United States Supreme Court explained that Congress is better positioned to extend Bivens liability to new contexts not previously recognized by the Court, and thus instructed federal district and appellate courts to conduct a rigorous analysis before authorizing a Bivens remedy in any new context.   See Ziglar v. Abbasi, 137 S. Ct. 1843, 1856-57 (2017); see also Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001); Tun-Cos v. Perrotte, 922 F.3d 514, 520-21 (4th Cir. 2019).   The Court established the following framework governing judicial expansion of Bivens liability into new contexts.   Ziglar, 137 S. Ct. at 1857-60; Tun-Cos, 922 F.3d at 522.

---

[16]      As noted above, plaintiff does not seek injunctive relief in this action.

21

The first step requires determining whether the case involves a "new Bivens context" because it is "different in [any] meaningful way" from the three prior cases in which the Court has provided a Bivens remedy. Ziglar, 137 S. Ct. at 1859. "A radical difference is not required." See Tun-Cos, 922 F.3d at 522. The Court, "without endeavoring to create an exhaustive list," noted that a case might differ in a meaningful way based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1859-60.

In the event the case involves a new context, the court analyzes whether "special factors counseling hesitation" in expanding Bivens are present. Ziglar, 137 S. Ct. at 1857 (quoting Carlson, 446 U.S. at 18); Tun-Cos, 922 F.3d at 523. This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S. Ct. at 1857-58. A special factor counseling hesitation "must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. Extending Bivens to a new context is a "disfavored judicial activity" where Congress is generally better suited to determine whether a new damages remedy should be authorized. Ziglar, 137 S. Ct. at 1857.

The Supreme Court has emphasized two special factors that counsel hesitation in extending Bivens to a new context: 1) whether an "alternative remedial structure is available" and 2) whether extending Bivens would violate separation-of-powers principles. Id. at 1857-58; see also Tun-Cos, 922 F.3d at 525-27. Additional relevant special factors include, inter alia, 1) "the

22

burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies"; 2) whether Congress has previously enacted legislation in the area, "making it less likely that Congress would want the judiciary to interfere" 3) whether a damages remedy is necessary to deter future similar violations; 4) whether the claim addresses broader policy questions delegated to an administrative agency; and 5) whether national security interests are at issue. Id. at 1856-63 (citing Wilkie v. Robbins, 551 U.S. 537 (2007); Malesko, 534 U.S. at 73-74; FDIC v. Meyer, 510 U.S. 471 (1994); United States v. Stanley, 483 U.S. 669 (1987); Chappell v. Wallace, 462 U.S. 296 (1983); and Bush v. Lucas, 462 U.S. 367 (1983)).

Here, plaintiff's claims present new Bivens contexts. Plaintiff's First Amendment retaliation claim is a new context because it invokes a different constitutional provision than those at issue in Bivens, Carlson, and Davis. See Doe v. Meron, 929 F.3d 153, 69 (4th Cir. 2019) ("The Supreme Court has not recognized a Bivens remedy for an alleged violation of the First Amendment."). Similarly, plaintiff's due process claims present new contexts where the only Fifth Amendment claim recognized by the Court has been for gender discrimination. See id. (holding Fifth Amendment due process violations that do not involve claims of gender discrimination present a new Bivens context); see also Schweiker v. Chilicky, 487 U.S. 412, 420 (1988) (denying, post-Davis, a Bivens remedy for Fifth Amendment procedural due process violations); Cantu v. Moody, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks Davis – which permitted a congressional employee to sue for unlawful termination [based on gender

23

discrimination] in violation of the Due Process Clause – means the entirety of the Fifth Amendment's Due Process Clause is fair game in a <u>Bivens</u> action).

Plaintiff's claims for racial discrimination under the Fifth Amendment also present a new context. As set forth above, the claim in <u>Davis</u> involved gender discrimination alleged by a congressional employee. Here, plaintiff is a federal inmate alleging racial discrimination. His claim is based on different conduct by different federal officials, which presents a new context. <u>See</u> <u>Meron</u>, 929 F.3d at 169 (holding Fifth Amendment due process claim presented a new context from <u>Davis</u> where "there are meaningful differences between the rank of the officers involved and the legal mandate under which the officers were operating"); <u>see also</u> <u>Chappell</u>, 462 U.S. at 305 (declining to extend <u>Bivens</u> where the legal claim was similar to <u>Davis</u> but involved military servicemember instead of congressional employee).

The court thus turns to whether it should recognize a new <u>Bivens</u> action based on plaintiff's claims. As discussed above, separation-of-powers principles and whether congress has previously enacted legislation in an area without creating a damages remedy both counsel hesitation in extending <u>Bivens</u> to a new context. <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1857-58, 1862. With respect to the latter special factor, Congress has "long been on notice that the Supreme Court is disinclined to extend <u>Bivens</u> to new contexts." <u>Cantu</u>, 933 F.3d at 423 (citing <u>Ziglar</u>, 137 S. Ct. at 1857). Congress also significantly restricted prisoner litigation by enacting the administrative exhaustion, three strikes, and filing fee provisions of the PLRA in 1995, but failed to include any authorization for damages remedies against federal correctional officials in the PLRA. <u>See</u> 28 U.S.C. § 1915(b), (g); 42 U.S.C. § 1997e(a). As <u>Ziglar</u> explains,

> Legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation. Some 15 years after <u>Carlson</u> was decided,

24

> Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. [Where] the [PLRA] itself does not provide for a standalone damages remedy against federal jailers, [i]t could be argued that this suggests Congress chose not to extend the <u>Carlson</u> damages remedy to cases involving other types of prisoner mistreatment.

<u>Ziglar</u>, 137 S. Ct. at 1865 (citation omitted).[17]

Furthermore, as separation-of-powers concerns, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform . . . . Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987). In the context of new constitutional claims filed by federal prisoners challenging prison policies, the Judiciary is ill suited, "absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Ziglar</u>, 137 S. Ct. at 1857-58. Separation-of-powers principles thus counsel strongly against recognizing a new <u>Bivens</u> remedy in the context of plaintiff's claims challenging his termination from UNICOR, placement in administrative detention, and transfer to FCI-Gilmer. <u>Id.</u> at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis."); <u>Wetzel v. Edwards</u>, 635 F.2d 283, 288 (4th Cir. 1980) ("It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere."); <u>see also</u>

---

[17] With respect to plaintiff's equal protection/racial discrimination claim specifically, Congress created the UNICOR program by legislative enactment, and provided remedies for inmates who become ill or injured while working in the program, but did not provide a damages remedy for federal prisoners who are subject to discrimination within the program. <u>See</u> 18 U.S.C. § 4121-4129, 28 C.F.R. § 345.10.

25

Bistrian v. Levi, 912 F.3d 79, 94-96 (3d Cir. 2018) (providing similar special factors analysis in context of challenge to administrative detention and retaliation claims and noting that decisions "to place an inmate in more restrictive detention involve[] real-time and often difficult judgment calls about disciplining inmates, maintaining order, and promoting prions officials' safety and security" which "strongly counsels restraint" in recognizing a new Bivens remedy for such claims).

Finally, extension of Bivens to provide new damages claims for federal prisoners would cause an increase in prisoner suits accompanied by increased administrative burden and costs to the federal government, and numerous personal burdens on the officers subject to suit. See Ziglar, 137 S. Ct. at 1858 (noting special factor counseling hesitation is the "the burdens on [g]overnmental employees who are sued personally [and] projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies"); Jones, 549 U.S. at 203 (discussing volume of prisoner suits); Bistrian, 912 F.3d at 95 (noting extending Bivens to new prisoner claims "would likely cause an increase of suits by inmates, increased litigation costs to the government, and burdens on individual prison employees to defend such claims").

In sum, plaintiff's claims "involve[] executive policies, implicate[] separation-of-power[s] concerns, and threaten[] a large burden to both the judiciary and prison officials." Bistrian, 912 F.3d at 96. Accordingly, the court declines to extend Bivens liability to the constitutional claims alleged in the operative amended complaint.[18]

_____

[18]  Plaintiff argues that he was not fully compensated or "made whole" by the administrative grievance procedures available in the FBOP, and thus a Bivens remedy should be extended in the instant case. Contrary to plaintiff's argument, the absence of a damages remedy standing alone is insufficient to extend Bivens liability. See Tun-Cos, 922 F.3d at 526-27.

26

C.       Defendants' Motion to Strike

As noted, defendants move to strike plaintiff's unauthorized sur-reply brief submitted in further opposition to the instant motion to dismiss. Where the arguments and factual allegations set forth in the sur-reply therein would not change the court's analysis of plaintiff's claims, the motion is denied as moot.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 53) is GRANTED. Plaintiff's claims are dismissed for failure to state a claim, and this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g). Alternatively, plaintiff's retaliation claim is dismissed without prejudice for failure to exhaust administrative remedies. Defendants' motion to strike (DE 66) is DENIED AS MOOT.

SO ORDERED, this the 30th day of September, 2020.


_____
LOUISE W. FLANAGAN
United States District Judge

27